IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

CHAMPAGNE METALS, an )
Oklahoma limited liability company, )
 )
Plaintiff, )
 )
v. )            No. CIV-02-528-C
 )
KEN-MAC METALS, INC., an Ohio )
corporation; SAMUEL, SON & Co., )
LIMITED, an Ontario, Canada, corporation; )
SAMUEL SPECIALTY METALS, INC., )
a New Jersey corporation; METALWEST, )
L.L.C., an Alabama limited liability )
company; INTEGRIS METALS, INC., a )
New York corporation; EARLE M. )
JORGENSEN COMPANY, a Delaware )
corporation; and RYERSON TULL, INC., )
 an Illinois corporation, )
 )
Defendants. )

**O R D E R**

Before the Court is Defendants' Motion to Preclude the Testimony of Donald A.

Murry, Ph.D.  Plaintiff filed a Response and the matter is now at issue.

Defendants argue Dr. Murry should not be allowed to testify, as his proposed

testimony fails to satisfy the standards of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993), and Fed. R. Evid. 702.  The Tenth Circuit has explained the effect of the

Daubert decision:

> Daubert changed the law of evidence by establishing a "gatekeeper"
> function for trial judges under Federal Rule of Evidence 702.  "Faced with a

proffer of expert scientific testimony, then, the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>Daubert,</u> 509 U.S. at 592, 113 S.Ct. 2786.  This gatekeeper function requires the judge to assess the reasoning and methodology underlying the exper's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts.  <u>See</u> <u>id.</u>

<u>Goebel v. Denver and Rio Grande Western R.R. Co.</u>, 215 F.3d 1083, 1087 (10th Cir. 2000).

The Court's obligation to carefully measure proposed expert testimony was adopted into the 2000 revision to Fed. R. Evid. 702.  That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mindful of these standards, the Court has determined that Dr. Murry should not be permitted to testify.  Review of Dr. Murry's report and his entire deposition indicate his opinions are not based on sufficient facts or data and are not the product of reliable principles and methods.

Dr. Murry agrees that a critical factor in determining whether anti-competitive conduct has occurred is a definition of the relevant market.  Under the facts of this case, the parties and their experts have identified two markets:  the upstream market -- which consists of sales of aluminum products by mills to a service center such as Plaintiff or Defendants; and the downstream market -- where the service center sells to an end user.  Plaintiff asserts that Defendants' wrongful conduct occurred in the <u>upstream</u> market and in his report, Dr.

2

Murry recognizes this as the relevant market.  Despite this, Dr. Murry's opinion, that Defendants engaged in anti-competitive conduct, is based on an analysis of the <u>downstream</u> market.  Despite the assertions in Plaintiff's response brief, neither Dr. Murry's report nor his deposition testimony offers a plausible explanation, based on sound economic theory, to support forming an opinion about one market based on analysis of an admittedly distinct market.  In a further attempt to rehabilitate him, Plaintiff argues that Dr. Murry's analysis can be reconciled because the upstream sales are logically proportional to downstream sales and therefore the effects on one market can be measured by examining activity in the other.  However, Plaintiff offers no foundation for this argument; it is solely the argument of counsel.  Plaintiff's attempted rehabilitation also ignores the impact of the mills selling directly to end users.  Dr. Murry admits those sales constitute a significant portion of the market and that the ability of the mills to sell directly to the end users affects the ability of the service centers to affect price.  Dr. Murry admits he did no investigation to quantify the impact of mill sales in the market and did not factor that impact into his analysis of the downstream market.  In short, Dr. Murry has failed to demonstrate his relevant market definition bears a scientifically rational relationship to the issue before the Court.  Accordingly, it will not be helpful to the jury and will be excluded.

Even assuming Dr. Murry had properly defined the market, he can offer no helpful opinion on whether Defendants had the ability to affect the market.  Indeed, Dr. Murry testified in his deposition that no single Defendant had market power and that he had done no analysis to support a conclusion that collectively they had market power.  Plaintiff

concedes this point in its response brief, arguing the issue of market power is irrelevant and Dr. Murry can testify on the detrimental effects of Defendants' conduct on the market.[1]

Regardless of whether it is called market power or detrimental effect, for the reasons set forth herein, Dr. Murry has failed to base his opinion about Defendants' ability to influence the market on appropriate facts or analysis.  In his report, Dr. Murry attempts to demonstrate how Defendants' actions had a detrimental effect on the market.  First, Dr. Murry opines that Defendants threatened to shift their purchases to a different mill if the mills did business with Plaintiff.  Dr. Murry opines this was a credible threat.  Second, Dr. Murry states that Plaintiff was only able to make purchases from a single mill as the other mills refused to sell to Plaintiff due to the threats from Defendants.  According to Dr. Murry, this refusal denied Plaintiff the opportunity to purchase products at competitive prices.  However, review of Dr. Murry's deposition makes clear there is no sound foundation for these opinions.  Dr. Murry admitted that the only evidence he had of a threat was from employees of Plaintiff.[2]  While it is permissible for an expert to rely on the statements of a party or counsel as a beginning point, there must be some attempt made at corroborating those facts.  In this case, Dr. Murry admitted that he did not undertake any type of survey or investigation to determine whether the prices offered to Plaintiff were competitive.  Yet he

---

[1] Plaintiff argues testimony on market power is unnecessary, as Defendants' conduct should be measured under the *per se* rule.  Because Dr. Murry's opinion lacks adequate foundation, it would be excluded regardless of the analysis applicable to Defendants' alleged conduct.

[2] Although Plaintiff argues that there is other evidence in the record to support the claim, Dr. Murry did not testify he relied on any of that evidence.  Consequently, for the issue of the validity of Dr. Murry's opinion, the other evidence is immaterial.

offered an expert opinion that the actions of Defendants caused Plaintiff to pay higher prices. No reasonable economist would simply accept the self-serving statement of an interested party as fact.  In this regard, Dr. Murry's opinion fails to satisfy one of the rules of <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999) ("an expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").[3]

Dr. Murry's opinion about Plaintiff's ability to obtain product falls prey to the same problem.  Dr. Murry did no investigation to determine if there were other mills who would have sold to Plaintiff at competitive prices and based his opinion that Plaintiff was denied product solely on statements of Plaintiff's employees.  Dr. Murry admitted that he did not know why Plaintiff thought the prices it was paying were not competitive and admitted that he had undertaken no effort to analyze the prices.  Finally, Dr. Murry agreed that evidence existed that at least some mills did not do business with Plaintiff because they had insufficient product and that, regardless of any actions by Defendants, those mills would not have done business with Plaintiff.  Yet Dr. Murry did nothing to analyze to what extent, if any, the lack of adequate supply affected Plaintiff's ability to obtain product or the price paid by Plaintiff for the product.  Based on these shortcomings, Dr. Murry can offer no valid

---

[3]  Dr. Murry's opinion is akin to that of an accident reconstructionist who opines that a roadway is defective, yet only talks to the plaintiff and never investigates the scene, examines photographs, or obtains any other information about the cause of the accident.  Under the Federal Rules of Evidence, <u>Daubert</u> and its progeny, valid expert testimony requires a greater assurance of reliability.

opinion that Defendants engaged in actions which had a detrimental effect on the market, much less an opinion that any such detrimental effect caused harm to Plaintiff.

Dr. Murry also opined that Defendants' actions injured competition. According to Dr. Murry, because Plaintiff could not purchase an adequate amount of product, it could not hire sales people. Because the sales people worked on commission they did not want to work for Plaintiff due to the difficulty it had in making sales. Dr. Murry also opined that other potential entrants into the business were deterred after seeing the response of Defendants to Plaintiff's entry. Once again Dr. Murry has failed to base these opinions on a sound foundation. When asked the basis for these opinions, Dr. Murry admitted the evidence had come from employees of Plaintiff and that he had done no independent verification of the facts. Dr. Murry admitted that he had not spoken with a single potential sales person who declined an offer to work for Plaintiff.

Regarding the alleged barrier to entry, Dr. Murry admitted that entry as a service center is relatively barrier free, because there are no patent, trade secret, or significant technological issues. Dr. Murry agreed that entry into the market could be accomplished if a potential entrant had the money to purchase the equipment. The only barrier to entry that Dr. Murry could identify was the alleged efforts of Defendants to pressure the mills. However, Dr. Murry admitted that he could find no evidence, other than the allegations of Plaintiff's employees, of such pressure. Dr. Murry admitted that an attempt to exert such pressure is full of difficulties. There are significantly more service centers than those named as Defendants. The evidence is clear that the Defendants engage in fierce competition

6

amongst themselves.  For the mills to refuse to increase the amount of their sales, much of which would be at a higher profit since Plaintiff is not entitled to the amount of volume discounts, is not economically rational.  Despite recognizing these potential pitfalls to Plaintiff's theory, Dr. Murry did no investigation or quantitative analysis to substantiate Plaintiff's allegations.  Rather, he simply accepted Plaintiff's allegations at face value and then formed an opinion that would support them.  Such a methodology does not pass muster and must be excluded under Daubert and Fed. R. Evid. 702.

Although Plaintiff does not request a hearing, the Court is obligated to develop the record to such an extent that it "has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Goebel, 215 F.3d at 1087 (quoting Daubert, 509 U.S. at 597).  Here, through the preclusion briefs and the summary judgment briefs, the parties have provided the Court with a substantial amount of argument and evidence.  The Court has been provided with complete copies of Dr. Murry's report, as well as a complete copy of his deposition.  Further, all parties have used these documents in support of their respective positions.  Thus, the Court finds no additional evidence is necessary and the Court has the material necessary to make an informed decision.

As set forth more fully herein, the opinions of Dr. Murry are not based on sufficient facts or data, nor are they the product of reliable principles and methods.  Accordingly, Dr. Murry's opinion fails to satisfy the standards of Daubert v. Merrell Dow Pharmaceuticals,

<u>Inc.</u>, 509 U.S. 579 (1993), and Fed. R. Evid. 702.  Defendants' Motion to Preclude the Testimony of Donald A. Murry, Ph.D. [Docket No. 229] is GRANTED.

IT IS SO ORDERED this 15th day of June, 2004.

ROBIN J. CAUTHRON
United States District Judge